In the Matter of Jeremy S. HAZARD and Marget M.L. Hazard, Debtors.

**Bankruptcy No. MM7–88–02884.**

United States Bankruptcy Court, W.D. Wisconsin.

Aug. 10, 1989.

Order reversed, D.C., 113 B.R. 494.

---

Kenneth J. Doran, Middleton, Wis., for Overhead Door Co.

Michael E. Kepler, Madison, Wis., for debtors.

J. Thomas Haley, Madison, Wis., for William T. Clark.

Peter M. Gennrich, Madison, Wis., for Kathryn Fleming.

## MEMORANDUM DECISION

ROBERT D. MARTIN, Chief Judge.

The debtors, Jeremy and Marget Hazard, moved under 11 U.S.C. § 522(f)(1) to avoid the judicial lien held by Overhead Door Co. ("Overhead"). Overhead resisted claiming that its lien does not impair the Hazards' homestead exemption.

The Hazards own a $90,000.00 home against which the following liens appear to have been properly docketed with the Dane County Register of Deeds:

| Lienholder | | Date of Recording | Amount Secured |
| --- | --- | --- | --- |
| Carteret | (mortgage) | 02–15–83 | $35,000.00 |
| Overhead | (judgment lien) | 06–09–87 | $ 6,366.99 |
| IRS | (tax lien) | 09–08–87 | $34,971.78 |

In addition, the Hazards have claimed the $40,000.00 [1] homestead exemption available to them under Wisconsin law. *See* Wis. Stat. § 815.20 (1987–88).

Section 522(f)(1) provides:

Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled ... if such lien is—

(1) a judicial lien.

The sole issue presented in this case is whether, and to what extent, the fixing of Overhead's judgment lien on the debtors' homestead "impairs an exemption to which the debtors would have been entitled." To answer this question we must first determine the parties' entitlements under state law and then determine whether the bankruptcy law should change those rights.[2]

Under Wisconsin law, encumbrances against real property generally are given priority in order of their recording. *See* Wis.Stat. § 706.08(1) (1987–88).[3] The prior-

---

**1.** The homestead exemption was raised from $25,000.00 to $40,000.00 as of April 8, 1986. *See* 1985 Wis.Laws § 29. Overhead initially argued that the exercise of the higher exemption amount against its judgment lien would be constitutionally impermissible. As Overhead has conceded, resolution of this issue would have no effect on the outcome of this contested matter; therefore, the court declines to address it.

**2.** As the Supreme Court stated in *Butner v. United States:*

Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding.

440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979). The Hazards urge the court to apply the lien avoidance formula devised by the court in *In re Magosin*, 75 B.R. 545, 547 (Bankr.E.D.Pa. 1987), which ignores the parties' nonbankruptcy entitlements in order to "maximize the 'fresh start' principle," *id.* at 550 n. 2 (citation omitted). Contrary to the Debtors' assertion, the priority positions of the various liens under applicable nonbankruptcy law, as well as the Debtors' homestead rights under state law, are

relevant in applying section 522(f)(1). *See In re Duncan*, 43 B.R. 833, 836–37 (Bankr.D.Alaska 1984) (under section 522(f)(1), "it must be determined if the debtors have an exemption ... which is impaired.... it must [then] be determined the extent to which the judicial lien creates that impairment"). *Cf. Pearlstein v. U.S. Small Business Admin.*, 719 F.2d 1169, 1175 (D.C.Cir.1983) (under section 724(b), it is a "settled rule that the relative priority among valid liens [is] to be determined by nonbankruptcy law").

**3.** This rule is slightly different as between judgment liens and mortgages. Because a judgment lienor is not a "purchaser for value" within the meaning of the recording statute, the recording statute does not protect the judgment lienor's priority as to after-recorded mortgages. *See West Federal Savings & Loan Ass'n v. Interstate Investment, Inc.*, 57 Wis.2d 690, 693–94, 205 N.W.2d 361 (1973). Whether a judgment lien has priority over a mortgage depends upon whether the judgment was properly docketed prior to the creation, rather than the recording, of the mortgage. *See IFC Collateral Corp. v. Commercial Units, Inc.*, 51 Wis.2d 41, 47–51, 186 N.W.2d 214 (1971). *See generally* Comment,

ity of a federal tax lien although determined by federal law [4], is also based on the date of its recording.[5]

A Wisconsin judgment lien encumbers only the surplus over and above all prior liens and the statutory limit of the homestead exemption. *See* Wis.Stat. §§ 806.- 15(1), 815.20(1) (1987–88). A homestead is not exempt as to, *inter alia,* consensual mortgages or tax liens. Wis.Stat. § 815.20(1) (1987–88); *Anchor Savings & Loan Assoc. v. Week,* 62 Wis.2d 169, 174, 213 N.W.2d 737 (1974). The tax lien can be enforced against even the exempt portion of the property; the judgment lien cannot. Thus, it would appear that a judgment lien is superior to a subsequently recorded federal tax lien unless the subject property is a homestead. The case law, such as it is, suggests that the IRS lien gains priority over the previously docketed judgment because the latter, but not the former, is subject to the homestead exemption.[6]

In *Lueptow v. Guptill,* 56 Wis.2d 396, 202 N.W.2d 255 (1972), the Guptills entered a land contract to purchase a homestead. Sometime later, the Guptills granted PCA a mortgage for $5,585.60 on the property. The day after the execution of the mortgage, the land contract vendor obtained a judgment for $3,600.00 against the Guptills on a claim independent from the land contract. The judgment was properly docketed the day before PCA's mortgage was recorded. Some months later, the property was sold at foreclosure, netting $22,000.00. The Guptills were paid $17,000.00 of this amount to pay off the balance due on the land contract. The issue presented to the court was the proper distribution of the remaining $5,000.00 as between the Gup-

tills, the PCA, and the judgment lienholder. The Wisconsin Supreme Court first held that the Guptills were entitled to a homestead exemption based on their equitable interest in the property. *Lueptow,* 56 Wis.2d at 401, 202 N.W.2d 255. The court then held that "the Guptills could validly exercise their homestead exemption in the proceeds of a sale of such homestead in order to forward such surplus to [the PCA]." *Id.* at 403, 202 N.W.2d 255. Thus, the court found that the $5,000.00 remaining from the sale of property was subject to the homestead exemption, and free from the judgment lien of the land contract vendor. Since the PCA, as the holder of a consensual lien was not precluded by the exemption statute from executing on the Guptills' homestead, *id.* at 403, 202 N.W.2d 255, the Supreme Court affirmed the trial court's decision to award the $5,000.00 to the PCA, *id.* at 407, 202 N.W.2d 255.

The proposition which *Lueptow* establishes is that a debtor may exercise the homestead exemption in order to satisfy a consensual mortgage which is junior to a prior-docketed judgment lien. The rationale for this rule is straightforward. Since the homestead is exempt as to judgment liens but not as to mortgages, the mortgagee may assert a right to payment from the foreclosure sale proceeds, which as to the judgment lienholder are exempt. *See Schwanz v. Teper,* 66 Wis.2d 157, 161, 223 N.W.2d 896 (1974) ("The [*Lueptow*] trial court's determination that the mortgage had priority was affirmed by this court on the basis that at the time the judgment was docketed and entered it was not a lien on the premises involved because the proceeds

---

*Judgment Liens Claimants' Rights Against Homestead Exemption Interests: An Equitable Distribution of Mortgage Foreclosure Sale Proceeds,* 1981 Wis.L.Rev. 697, 699–700.

4. *United States v. Acri,* 348 U.S. 211, 213, 75 S.Ct. 239, 241, 99 L.Ed. 264 (1955).

5. *United States v. Pioneer American Insurance Co.,* 374 U.S. 84, 87, 83 S.Ct. 1651, 1654, 10 L.Ed.2d 770 (1963) ("[T]he priority of the federal tax lien ... as against liens created under state law is governed by the common-law rule—

'the first in time is the first in right.' ") (citations omitted).

6. "Priority" among liens is not synonymous with "prior in time." An instance where bare temporal priority yields to other priority rules under Wisconsin law is the case of a purchase money mortgage executed after the docketing of a judgment lien. Although the judgment lien may enjoy temporal priority, the Wisconsin Supreme Court has held that the purchase money mortgage nonetheless is a superior lien on the mortgaged property. *Northern State Bank v. Toal,* 69 Wis.2d 50, 56, 230 N.W.2d 153 (1975).

were exempt under the homestead exemption.").[7] °

The rationale of *Lueptow* applies to nonconsensual as well as consensual liens which are enforceable against the homestead. If a later-in-time mortgagee would gain priority over a judgment lienholder as to the exempt homestead, then the IRS tax lien in this case is superior to Overhead's judgment lien to the extent of the Hazards' statutory exemption. The question remains, however, whether the homestead exemption is exhausted to the extent it is applied to the tax lien.

It has been suggested that the value of the exemption is expended when a lien not subject to its effect is satisfied ahead of a lien which is. *See* Comment, 1981 Wis.L. Rev. at 715–15, 718–19 (cited in note 2). From this approach, the present case would result in the following entitlements under applicable nonbankruptcy law:

| | | | |
|---|---|---|---|
| | Value of Property: | | $90,000.00 |
| 1st | Carteret | (mortgage) | $35,000.00 |
| 2nd | IRS | (tax lien) | $34,971.78 |
| 3rd | Debtors | (exemption) | $ 5,028.22 [$40,000–$34,971.78] |
| 4th | Overhead | (judgment lien) | $ 6,366.99 |
| 5th | Debtors | (remainder) | $ 8,633.01 |

Thus, the Hazards' remaining homestead exemption under state law is limited to $5,028.22. And under state law, Overhead's lien would be junior to both the IRS lien and the Hazards' remaining exemption. However, because there is sufficient value in the property to pay both the remaining exemption and the judgment lien, the fixing of the latter would not impair the former.

This outcome "protects the [judgment] creditor from having the sale proceeds available to satisfy his claim somehow reduced by the unilateral action of the homestead debtor in mortgaging his property to a third party." Comment, 1981 Wis.L.Rev. at 729. This result is fully in accord with the rationale and dicta of *Lueptow*. There, the court found that the debtor was asserting his homestead rights on behalf of the junior mortgagee, *Lueptow*, 56 Wis.2d at 403, 202 N.W.2d 255, and implied that the exemption was extinguished to that extent, *id.* at 406, 202 N.W.2d 255 (the junior mortgagee "effectively defeat[s] the mortgagor's exemption.").

A contrary position arguably is implicit in *Anchor Savings & Loan Ass'n v. Week*, 62 Wis.2d 169, 213 N.W.2d 737 (1974). In *Week*, property claimed as a homestead was subject to three encumbrances: a consensual mortgage, a federal tax lien, and a judgment lien (the case does not indicate either the temporal priority of these liens, or the amounts due on the various liens). After the property was sold under foreclosure of the mortgage, the debtor claimed the proceeds as exempt from the judgment lien. The court held that the debtor had a valid homestead claim. The court then adjudicated the rights of the judgment lienor vis-a-vis the rights of the debtor and the IRS:

Once the judgment was entered in this case, finding the homestead exemption as it did, the only rights that could thereafter be asserted by any general judgment creditor would be to that portion of the surplus which was in excess of the statutory limits of the homestead exemption. In the instant case, once the foreclosure judgment was entered, the claim of the [judgment lienholder] was subordinate to that portion of the surplus

7. *See also* Comment, 1981 Wis.L.Rev. at 710 ("The Wisconsin Supreme Court, in *Lueptow v. Guptill*, held that a nonpurchase money mortgagee may assert his mortgagor's homestead exemption and subordinate a creditor's claim under an antedated judgment lien to proceeds from a court order sale of the property.").

which was statutorily exempt as homestead and subordinate to the tax liens to which the homestead exemption does not apply.

*Id.* at 174, 213 N.W.2d 737.

| Value of Property | | $90,000.00 |
|---|---|---|
| Carteret | (mortgage) | $35,000.00 |
| IRS | (tax lien) | $34,971.78 |
| Debtor | (exemption) | remainder up to $40,000 [20,028.22] |
| Overhead | (judgment lien) | $ 0.00 |

Under this view, the IRS lien does not "succeed" to the debtors' exemption right but rather primes it and, therefore, the fixing of Overhead's judgment lien would impair the debtors' exemption.

If this reading of the case is correct, *Week* would appear to apply the homestead exemption twice against the judgment lien, first to permit the IRS lien to prime the judgment lien and again to permit the debtor an interest in the property ahead of the judgment creditor. The outcome of *Week* seems contrary to the apparent rationale of *Lueptow*, a decision on which it appeared to rely, not overrule. The only factor in favor of extending *Week* to this case is the nonconsensual nature of the tax lien. Where the lien is nonconsensual, it is less compelling to reason that the debtor "mortgaged away" or otherwise waived the right to an exemption[8]. However, the choice of which debts receive payment remains with the debtor. In this day of elaborate tax planning it may well be that a sophisticated debtor could intentionally let lienable taxes go unpaid in the confidence that they will be recovered from funds otherwise available to judgment lienholders without jeopardizing the generous homestead exemption allowed in Wisconsin.

The better view of state law entitlements is that reached by direct reliance on *Luep-*

Applying the apparent ruling of *Week* in the present case would result in the following entitlements under state law:

*tow.* Although section 522(f)(1) does create an entitlement available solely in bankruptcy, that entitlement is measured by non-bankruptcy rights. In this case under non-bankruptcy law, giving full recognition to the debtors' homestead exemption, Overhead would be paid in full. That being so, Overhead's lien cannot be said to impair the debtors' exemption. The motion must be denied.

("[W]here a debtor voluntarily subjects his property to the lien of an unavoidable subordinate mortgage, the debtor's act insulates the prior judgment liens from avoidance for exemption purposes.").

**8.** *Compare In re Grosso,* 51 B.R. 266, 270–71 (Bankr.D.N.M.1984) (by voluntarily encumbering remaining equity in homestead after judgment liens had been docketed, debtor "impaired" his homestead exemption); *In re Baldwin,* 84 B.R. 394, 399 (Bankr.W.D.Pa.1988)